UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MARVIN DEAN NOOR,

        Petitioner,

   v.

M. MARTELL, Warden (A),

        Respondent.
                                 /

NO. CIV. 08-1656 WBS JFM

ORDER RE: MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS

----oo0oo----

        Based on a prison disciplinary action taken against him, petitioner Marvin Dean Noor filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. As petitioner is a state prisoner proceeding pro se, his case was referred to a United States Magistrate Judge pursuant to § 636(b)(1)(B) and Local General Order No. 262. On April 30, 2009, the Magistrate Judge recommended that the court deny respondent's motion to dismiss petitioner's habeas action as moot. Respondent filed timely objections, and the court now reviews the Magistrate Judge's Findings and Recommendations de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

        In 1980, petitioner plead guilty to first-degree murder and was sentenced to life imprisonment with the possibility of

1

parole.  (Habeas Pet. ¶ 4.)  Petitioner has been eligible for parole since 1993 but has been denied parole six times, including the most recent denial in October 2005.  (Resp't's Mem. Ex. B.)  In July 2006, petitioner was charged with the rules violation of "Inappropriate Conduct in the Visiting Room" based on his alleged "excessive contact" with his wife during a supervised visit.  (Id. Ex. A at 3-4.)  Although petitioner denied the charges, he was found guilty and, as a consequence, was placed on "no-visit" status for ninety days and assessed thirty days "loss of behavioral credit."  (Id.)  After exhausting his administrative and state judicial remedies, petitioner filed this habeas action, seeking to expunge the 2006 prison disciplinary action and findings from his record.  (Habeas Pet. ¶¶ 10-13.)  Respondent now moves to dismiss petitioner's action as moot because the no-visit status has long since expired and the loss of the behavioral credit will not impact petitioner's duration of confinement.

In determining that petitioner's claim is not moot, the Magistrate Judge relied on Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989), which held that "[h]abeas corpus jurisdiction [] exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." Id. at 1269.  Fifteen years after Bostic, the Ninth Circuit explained that the use of the term "likely" was intended to identify "claims with a sufficient nexus to the length of imprisonment so as to implicate, but not fall squarely within, the 'core' challenges identified by the [Supreme Court in] Preiser" v. Rodriquez, 411

2

U.S. 475 (1973). Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004); see Preiser, 411 U.S. at 487-89 (identifying claims that are "within the core of habeas corpus" as those that attack "the very duration of [a prisoner's] physical confinement" by seeking immediate release from or a reduction in the length of confinement).

As mootness was not at issue in Bostic, its standard of allowing habeas jurisdiction when "expungement is likely to accelerate the prisoner's eligibility for parole" must be considered in light of precedent that directly addresses the issue before the court: whether petitioner's claim is now moot.

"A case becomes moot when 'it no longer present[s] a case or controversy under Article III, § 2, of the Constitution.'" Wilson v. Terhune, 319 F.3d 477, 479 (9th Cir. 2003) (quoting Spencer v. Kemna, 523 U.S. 1, 7 (1998)) (alteration in original). Based on § 2254's jurisdictional requirement that a petitioner be in "custody" at the time of seeking habeas relief, a claim is potentially moot if the very "custody" the petitioner challenges terminates.[1] Spencer, 523

---

[1] "Custody" for purposes of § 2254 extends beyond physical incarceration to include "conditions and restrictions" that "significantly confine and restrain [petitioner's] freedom." Jones v Cunningham, 371 U.S. 236, 243 (1963).
    Petitioner agrees that his ninety-day no-visit status expired on October 22, 2005. He also does not dispute respondent's representation that, because he has been eligible for parole since 1993, the thirty-day credit loss could not affect his release date. (Resp't's Mem. 3:1-13, 4:4-13.)
    Petitioner initially contends his claim is not moot because he and his wife were also excluded from the "Friday visiting program" for three years, and that restriction is still in effect. The Magistrate Judge did not address this alleged restriction, and the disposition of petitioner's Rules Violation Report does not reflect it. (Resp't's Mem. Ex. A at 4); see Safe

3

U.S. at 7; <u>Williamson v. Gregoire</u>, 151 F.3d 1180, 1182 (9th Cir. 1998). When the challenged "custody" has terminated, a petitioner may nonetheless avoid dismissal of a habeas petition as moot if "some concrete and continuing injury other than the now-ended ["custody"]--some 'collateral consequence' of the conviction--" remains. <u>Spencer</u>, 523 U.S. at 7; <u>see</u> <u>Carafas v. LaVallee</u>, 391 U.S. 234, 237 (1968) (explaining that collateral consequences are "'disabilities or burdens [which] may flow from' [a] petitioner's conviction," thereby giving the petitioner "'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him'") (first alteration in original).

The existence of collateral consequences that may avoid dismissal of a habeas petition as moot can either be presumed or proven. <u>Spencer</u>, 523 U.S. at 8. For example, collateral consequences are presumed when a habeas petition attacks a criminal conviction. <u>Id.</u> (citing <u>Sibron v. New York</u>, 392 U.S. 40, 55-56 (1968)). On the other hand, the presumption of collateral consequences does not apply to a habeas petition that seeks to reverse a revocation of parole. <u>Id.</u> at 14.

---

<u>Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."); <u>Biggs v. Terhune</u>, 334 F.3d 910, 916 (9th Cir. 2003) (taking judicial notice of "the transcript of [petitioner's] hearing before the Board of Prison Terms" and stating that "[m]aterials from a proceeding in another tribunal are appropriate for judicial notice"). Assuming the "Friday visiting program" restriction amounts to "custody" under § 2254, <u>see</u> <u>infra</u> note 2, the court cannot maintain habeas jurisdiction based solely on the unsupported allegation that a three-year visiting restriction resulted from the disciplinary action that petitioner seeks to expunge.

4

In holding that the revocation of parole was insufficient to give rise to the presumption of collateral consequences, the Supreme Court reasoned that, even though "the parole violations found by the revocation decision would enable the parole board to deny [petitioner's] parole in the future," this consequence was too speculative, especially because the petitioner was "able--and indeed required by law--" to avoid returning to prison and becoming eligible for parole in the future. Id. at 13. The possibility that a parole revocation might affect a petitioner's future employment prospects or criminal sentence was also insufficient to give rise to the presumption of collateral consequences:

> These "nonstatutory consequences" were dependent upon "[t]he discretionary decisions . . . made by an employer or a sentencing judge," which are "not governed by the mere presence or absence of a recorded violation of parole," but can "take into consideration, and are more directly influenced by, the underlying conduct that formed the basis for the parole violation."

Id. (quoting Lane v. Williams, 455 U.S. 624, 632-33 (1982)) (alteration in original).

The Ninth Circuit has also held that "the presumption of collateral consequences does not apply to prison disciplinary proceedings." Wilson, 319 F.3d at 480. Although a parole board is required to consider any disciplinary actions when determining whether a prisoner should be granted parole, Cal. Code Regs. tit. 15, § 2402, the Ninth Circuit reasoned that the delay or denial of parole based on prison disciplinary proceedings presents the "type of nonstatutory consequence [that is] dependent on discretionary decisions" and thus insufficient to give rise to the presumption of collateral consequences. Wilson, 319 F.3d at

5

481. Petitioner is therefore unable to rely on the presumption of collateral consequences to withstand dismissal of his claim as moot. Id.; accord Franco v. Clark, No. 07-267, 2007 WL 1544715, at *1 (E.D. Cal. May 25, 2007).[2]

Nonetheless, petitioner's habeas petition is not subject to dismissal as moot if he can prove that actual collateral consequences are a likely--not merely speculative or ephemeral--result from the disciplinary action he challenges. Wilson, 319 F.3d at 481 & n.4. Petitioner identifies the delay or denial of his parole as the collateral consequence he will suffer if the 2006 disciplinary action remains in his record.

To show that the disciplinary action will delay or defeat the grant of his parole, petitioner submitted transcripts from his prior Parole Consideration Hearings.[3] First, when the Parole Board denied petitioner parole on March 14, 2002, it expressly warned petitioner that his receipt of another disciplinary action would adversely and unequivocally affect his chance of receiving parole in the future:

> And the recommendations that we're making, Mr. Noor, is that you become, first of all, and <u>you remain disciplinary free</u>. In your case, sir, <u>you cannot afford one disciplinary</u> because when you get a disciplinary you have to put time between that disciplinary. And it's not just the Panel members, it's the totality of the review process. As I mentioned to you earlier it goes to

---

[2] Although the Magistrate Judge did not discuss Spencer or Wilson, it appears he relied on something akin to the presumption of collateral consequences. (See Mag. J.'s Findings & Recommendations 2:21-3:3 & n.2.)

[3] The court may properly consider the transcripts from petitioner's Parole Consideration Hearings to resolve whether it has jurisdiction over this matter, Safe Air for Everyone, 373 F.3d at 1039, and may take judicial notice of the transcripts, Biggs, 334 F.3d at 916.

6

>   decision review and from there to the governor and <u>disciplinaries is like a kiss of death</u>. <u>You get a disciplinary, you just may as well give yourself additional time in prison</u>. Especially the kind that you received, a Division E I believe it was. You cannot receive those, not even a 128(a). So, you need to get disciplinary free and you need to put some time between that . . . . [Y]ou have to be cognizant of your surroundings, <u>and you have to be really aware that you cannot receive disciplinaries and that you have to be disciplinary free</u>.

(Pet.'s Opp'n Ex. A at 100:4-22, 101:4-7 (emphasis added).)

Three years later at petitioner's Parole Consideration Hearing on August 23, 2005, the Parole Board referenced the warnings it gave petitioner about receiving disciplinaries during his 2002 hearing (<u>id.</u> Ex. B at 44:16-23) and again admonished him about the effects of his past and any future disciplinary actions:

>   Furthermore we feel that in terms of your gains you must be able to demonstrate that you can go a longer period of time with those gains before you can be found suitable for parole. Specifically what I am talking about is 115s, in that in the year 2000 you did receive a 115. <u>That's only five years ago. You must be able to demonstrate that you can go a longer period of time disciplinary-free before you can be found suitable by this Board</u>. . . . In the meantime, sir, <u>we make the following recommendations. And that is you remain disciplinary-free</u> . . . .

(<u>Id.</u> Ex. B at 98:24-99:7, 99:18-20 (emphasis added).) Petitioner's prison "Cumulative Case Summary" also indicates that, aside from the disciplinary action petitioner challenges, he has remained "disciplinary-free" since last incurring a disciplinary in 2000. (Resp't's Mem. Ex. B at 1.) Taken together, this evidence shows that subsequent parole boards will likely consider recommendations and warnings that petitioner received at his previous parole hearings and will more than likely delay or deny his parole because of the disciplinary

7

action he challenges.

Furthermore, in finding that the petitioner in <u>Wilson</u> did not prove the existence of collateral consequences, the Ninth Circuit emphasized that a future parole board would more likely be influenced by the conduct underlying petitioner's disciplinary proceeding (escaping from prison), not the proceeding itself. <u>Wilson</u>, 319 F.3d at 482.  In <u>Wilson</u>, however, the petitioner challenged only the disciplinary proceeding; he did not deny that he had escaped from prison or seek to expunge that conduct from his record.  <u>Id.</u>; <u>see also</u> <u>Bostic</u>, 884 F.2d at 1269 (identifying habeas claims that sought "relief from the imposition of disciplinary sanctions involving forfeiture of statutory good time or segregation from the general prison population" and emphasizing that, "[i]n each case, appellant [sought] expungement of the incident from his disciplinary record").

Similarly, when the Supreme Court first reasoned that potential employers or judges would "take into consideration, and [be] more directly influenced by, the underlying conduct that formed the basis for [a] parole violation," it clarified that the petitioners had not sought to expunge the conduct underlying the parole violations from their records.  <u>See</u> <u>Lane</u>, 455 U.S. at 633 & n.14 ("Any disabilities that flow from whatever [petitioners] did to evoke revocation of parole are not removed--or even affected--by a District Court order that simply recites that their parole terms are 'void.'  The District Court's order did not require the Warden to expunge or make any change in any portion of [petitioners'] records.  Nor have [petitioners] ever requested such relief.").  <u>But see</u> <u>Spencer</u>, 523 U.S. at 13 n.5

1  (recognizing that respondents' decision not to "attack[] 'the
2  finding that they violated the terms of their parole'" was "not
3  framed as an independent ground for the decision" in Lane).
4         Unlike the underlying conduct that would have remained
5  in the records of the petitioners in Wilson and Lane even if the
6  their habeas claims were successful, petitioner in this case
7  seeks to expunge the disciplinary action--and thus the findings
8  about the underlying conduct--from his record.  (Habeas Pet. 6 at
9  § 12(C), 8 at § 12(A).)  If petitioner's habeas claim is
10 successful, it therefore appears that a future parole board would
11 neither consider petitioner's disciplinary action nor the conduct
12 giving rise to it.  The transcripts from petitioner's prior
13 parole consideration hearings also illustrate that the mere
14 presence of the disciplinary action in petitioner's case--
15 regardless of the underlying conduct--is likely to delay or
16 defeat any grant of his parole.
17         Accordingly, because petitioner has submitted
18 sufficient evidence to show that he is likely to suffer
19 collateral consequences from the challenged disciplinary action,
20 habeas jurisdiction exists and respondent's motion to dismiss his
21 case as moot should be denied.
22         IT IS THEREFORE ORDERED that respondent's motion to
23 dismiss this action be, and the same hereby is, DENIED.
24 DATED:  July 1, 2009

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE